UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| DANNY HARRIS, Individually and on Behalf of All Others Similarly Situated, | § § § | |
| | § | Civil Action No. 1:18-cv-0022 |
| Plaintiff, | § § | |
| | § | JURY TRIAL DEMAND |
| v. | § § | |
| BAZAARVOICE, INC., GENE AUSTIN, CRAIG A. BARBAROSH, KRISTA BERRY, STEVE H. BERKOWITZ, THOMAS J. MEREDITH, JEFFREY HAWN, ALLISON WING, BV PARENT, LLC, BV MERGER SUB, INC., and MARLIN EQUITY PARTNERS, | § § § § § § § § | |
| | § | |
| Defendants. | § | |

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a)
AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff Danny Harris ("Plaintiff"), by and through his undersigned attorneys, brings this class action on behalf of himself and all others similarly situated, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by Bazaarvoice, Inc. ("Bazaarvoice" or the "Company") and other related parties and nonparties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain Defendants (defined below) and other related nonparties; (c) review of news articles, shareholder communications, and postings on Bazaarvoice's website concerning the Company's public statements; and (d) review of other publicly available information concerning Bazaarvoice and Defendants.

## NATURE OF THE ACTION

1.      This action is brought as a class action by Plaintiff on behalf of himself and the other public holders of the common stock of Bazaarvoice against the Company and the members of the Company's board of directors (the "Board") for violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed sale of Bazaarvoice to Marlin Equity Partners ("Marlin Equity"), BV Parent, LLC ("Parent"), and BV Merger Sub, Inc. ("Merger Sub," with Parent and Marlin Equity collectively referred to herein as "Marlin") (the "Proposed Merger").

2.      On November 26, 2017, the Board caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Marlin, pursuant to which each shareholder of Bazaarvoice common stock will have the right to receive $5.50 in cash and each Bazaarvoice share (the "Merger Consideration").

3.      The special meeting of Bazaarvoice stockholders to vote on the Proposed Merger is scheduled for January 29, 2018.

4.      On December 26, 2017, Defendants caused the Company to file a proxy statement (the "Proxy Statement") with the SEC in connection with the Proposed Merger.

5.      While Defendants are touting the fairness of the Merger Consideration to the Company's stockholders in the Proxy Statement, they have failed to disclose certain material information that is necessary for stockholders to properly assess the fairness of the Proposed Merger, thereby rendering certain statements in the Proxy Statement incomplete and misleading.

6.      It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote

so that they can properly exercise their corporate suffrage rights.  For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 and Regulation G, 17 C.F.R. § 244.100.

7.      Plaintiff seeks to enjoin Defendants from holding the stockholder vote on the Proposed Merger and taking any steps to consummate the Proposed Merger unless and until the material information discussed below is disclosed to Bazaarvoice stockholders sufficiently in advance of the vote on the Proposed Merger or, in the event that the Proposed Merger is consummated, to recover damages resulting from Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

9.      Personal jurisdiction exists over each Defendant either because each Defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

10.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because, among other things: (i) the conduct at issue had an effect in this District; (ii) Bazaarvoice's principal executive offices are located in this District; (iii) each of the Individual Defendants, and Company officers and/or directors, either resides in this District or has extensive contacts within this District; (iv) a substantial portion of the transactions and wrongs complained of herein, occurred in this District; (v) most of the

relevant documents pertaining to Plaintiff's claims are stored (electronically and otherwise), and evidence exists, in this District; and (vi) Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## THE PARTIES

11.     Plaintiff Danny Harris is, and at all relevant times has been, a Bazaarvoice stockholder.

12.     Defendant Bazaarvoice is a Delaware corporation with its principal executive offices located at 10901 South Stonelake Blvd., Austin, Texas, 785759.  Bazaarvoice's common stock is listed on the NASDAQ under the ticker symbol "BV."

13.     Defendant Gene Austin ("Austin") has been the Chief Executive Officer ("CEO") since February 2014, President since April 2013, and a member of the Company's Board since November 2013.

14.     Defendant Craig A. Barbarosh ("Barbarosh") has been a member of the Company's Board since September 2017.  Defendant Barbarosh is a member of the Company's Compensation Committee.

15.     Defendant Krista Berry ("Berry") has been a member of the Company's Board since April 2017.

16.     Defendant Steve H. Berkowitz ("Berkowitz") has been a member of the Company's Board since October 2015.  Defendant Berkowitz is the Chair of the Compensation Committee and a member of the Nominating and Governance Committee.

17.     Defendant Thomas J. Meredith ("Meredith") has been a member of the Company's Board since August 2010.  Defendant Meredith is the Chair of the Audit Committee and a member of the Compensation Committee.

18.     Defendant Jeffrey Hawn ("Hawn") has been a member of the Company's Board since April 2015.

19.     Defendant Allison Wing ("Wing") has been a member of the Company's Board since April 2017.

20.     Defendants Austin, Barbarosh, Berry, Berkowitz, Meredith, Hawn, and Wing are referred to collectively as the "Individual Defendants."

21.     Defendant Parent was formed on November 22, 2017, solely for the purpose of engaging in the transactions contemplated by the Merger Agreement.

22.     Defendant Merger Sub is a wholly owned subsidiary of Parent, solely formed on November 22, 2017, for the purpose of engaging in the transactions contemplated by the Merger Agreement.

23.     Defendant Marlin Equity is an affiliate of Parent and Merger Sub.  In connection with the transactions contemplated by the Merger Agreement, Marlin Equity has provided to Parent equity commitments of up to $235 million.

24.     The Individual Defendants, Bazaarvoice, Parent, Merger Sub, and Marlin Equity are collectively referred to as "Defendants."

**CLASS ACTION ALLEGATOINS**

25.     Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the other public stockholders of Bazaarvoice (the "Class").  Excluded from the Class

are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant.

26.     This action is properly maintainable as a class action because:

a.     The Class is so numerous that joinder of all members is impracticable.  As of December 1, 2017, there were approximately 86,089,267 shares of Bazaarvoice common stock outstanding held by hundreds to thousands of individuals and entities scattered throughout the country.  The actual number of public stockholders of Bazaarvoice will be ascertained through discovery;

b.     There are questions of law and fact that are common to the Class that predominate over any questions affecting only individual members, including the following:

i.     whether Defendants have misrepresented or omitted material information concerning the Proposed Merger in the Proxy Statement in violation of Section 14(a) of the Exchange Act;

ii.     whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

iii.     whether Plaintiff and other members of the Class will suffer irreparable harm if compelled to vote their shares regarding the Proposed Merger based on the materially incomplete and misleading Proxy Statement.

c.     Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

d.     Plaintiff's claims are typical of the claims of the other members of the Class, and Plaintiff does not have any interests adverse to the Class;

e.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the party opposing the Class;

f.     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole; and

g.     A class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

27.     Bazaarvoice was founded in 2005 and is a network that connects brands and retailers with consumers.  Each month, more than 700 million shoppers view and share opinions, questions and experiences about the products on the Bazaarvoice network.  The Company's services enable its clients to: i) capture and display consumer-generated content, such as online ratings and reviews, photos, and questions and answers about specific products and services, which creates consumer confidence and increases conversion rates; ii) syndicate that consumer-generated content into a vast network of brand and retail clients where it can further influence online and in-store purchases; iii) understand consumer sentiment so clients can respond to what consumers want; iv) monetize the value of that content through targeted advertising based on online and offline shopping behavior.

28.     On November 26, 2017, the Individual Defendants caused the Company to enter into the Merger Agreement with Marlin, pursuant to which each shareholder of Bazaarvoice common stock will have the right to receive $5.50 in cash and each Bazaarvoice share.

## FALSE AND MISLEADING STATEMENTS
## AND/OR MATERIAL OMISSIONS IN THE REGISTRATION STATEMENT

29.     On December 26, 2017, the Company filed the Proxy Statement (reviewed and approved by Bazaarvoice's Board) with the SEC in connection with the Proposed Merger containing background information and the financial analyses prepared by GCA Advisors, LLC ("GCA").   The Proxy Statement solicits the Company's shareholders to vote in favor of the Proposed Merger.   Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material false and misleading statements or material misrepresentations or omissions.   However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make an informed decision concerning whether to vote in favor of the Proposed Merger, in violation of Sections 14(a) and 20(a) of the Exchange Act.

30.     In recent months, the SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of such projections.[1]   Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of

---

[1]  *See, e.g.*, Nicolas Grabar and Sandra Flow, Non-GAAP Financial Measures: The SEC's Evolving Views, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), *available at* https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measuresthesecs evolving-views/; Gretchen Morgenson, Fantasy Math Is Helping Companies Spin Losses Into Profits, N.Y. Times, Apr. 22, 2016, available at http://www.nytimes.com/2016/04/24/business/fantasy-mathis-helping-companies-spin-ossesinto- profits.html?_r=0.

non-GAAP financial measures that demonstrate the SEC's tightening policy.[2]   One of the new

C&DIs regarding forward-looking information, such as financial projections, explicitly requires

companies to provide any reconciling metrics that are available without unreasonable efforts.

31.     Specifically, the Proxy provides values for non-GAAP (Generally Accepted

Accounting Principles) financial metrics such as (1) Adjusted EBITDA, (2) Free Cash Flow, and

(3) Unlevered Free Cash Flow, but fails to provide: (a) the line items used to calculate these non-

GAAP measures, or (b) a reconciliation of these non-GAAP metrics to their most comparable

GAAP measures, in direct violation of Regulation G and consequently Section 14(a).   Proxy

Statement, at 54.

32.     The Proxy Statement defines Adjusted EBITDA as "GAAP net loss adjusted for

stock based expense, contingent consideration related to acquisitions, depreciation and

amortization (including amortization of capitalized internal-use software development costs),

restructuring charges, out of period sales tax refunds, integration and other costs related to

acquisitions, other non-business costs and benefits, income tax expense and other (income)

expense, net."  Proxy Statement, at 53.  However, the Proxy Statement fails to provide the values

of any of these line items and fails to reconcile Adjusted EBITDA to its most comparable GAAP

equivalent.  Proxy Statement, at 53.

33.     The Proxy Statement defines Free Cash Flow as "Adjusted EBITDA adjusted for

an amount equal to the Company's projected estimate of aggregate increases in net working

capital, cash taxes, capitalized internal use software and increases in property, plant and

equipment."  Proxy Statement, at 53.  However, the Proxy Statement also fails to provide the

value of any of these line items, and also fails to reconcile Free Cash Flow to its most

---

[2]  Non-GAAP Financial Measures, Compliance & Disclosure Interpretations, U.S. SECURITIES AND
EXCHANGE COMMISSION (May 17, 2017), *available at* https://www.sec.gov/divisions/corpfin/
guidance/nongaapinterp.htm.

comparable GAAP equivalent.   Proxy Statement, at 53.   The Company's failure to reconcile Adjusted EBITDA makes it impossible for stockholders to reconcile Free Cash Flow.

34.     The Proxy Statement notes that "management prepared an adjusted calculation of unlevered free cash flow that was derived by subtracting separate estimated projected amounts for increases in net working capital, cash taxes, capitalized internal use software and increases in property, plant and equipment rather than an aggregate estimated projected amount."   Proxy Statement, at 54.   Even though the Proxy Statement discloses that the Board relied upon unlevered free cash flows ("UFCF"), which were prepared by the Company using "separate estimated projected amounts" for several key line items, the Proxy Statement fails to disclose those line items or reconcile UFCF to its most comparable GAAP equivalent measure.

35.     When a company discloses non-GAAP financial measures in a proxy statement that were relied on by a board of directors to recommend that shareholders exercise their corporate rights in a particular fashion, the company must, pursuant to SEC mandate, also disclose all projections and information that is necessary to make the non-GAAP measures not misleading and must provide a reconciliation of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP.   17 C.F.R. § 244.100.

36.     In order to make the projections on pages 52-54 of the Proxy Statement materially complete and not misleading, at the very least, the Company must disclose the line item projections for the financial metrics that were used to calculate the non-GAAP measures, including: (i) net income; (ii) net earnings; (iii) earnings per share; (iv) interest expense; (v) depreciation and amortization; (vi) amortization of intangibles; and (vii) a reconciliation of all non-GAAP to GAAP metrics.   Such projections are necessary to make the non-GAAP

projections included in the Proxy Statement not misleading and leaves Bazaarvoice shareholders without the necessary, material information to reach a fully informed decision concerning the Company, the fairness of the merger consideration, and, ultimately, whether to vote in favor of the Proposed Merger.

37.     Failure to provide complete and full disclosure of the line item projections for the metrics used to calculate the above-mentioned non-GAAP metrics leave Bazaarvoice shareholders without the necessary, material information to reach a fully informed decision concerning the Company, fairness of the merger consideration, and whether to vote in favor of the Proposed Merger.

38.     Further, Bazaarvoice has previously provided its shareholders with the above-mentioned information.  For instance, the following chart is excerpted from Bazaarvoice's press release on February 28, 2017, concerning the Company's financial results for the third fiscal quarter of 2017:

**Bazaarvoice, Inc.**
**Reconciliation of GAAP to Non-GAAP Financial Measures**
**(in thousands, except net loss per share data)**
**(unaudited)**

|  | Three Months Ended January 31, | | Nine Months Ended January 31, | |
| --- | --- | --- | --- | --- |
|  | 2017 | 2016 | 2017 | 2016 |
| Non-GAAP net income (loss) per share: | | | | |
| GAAP net loss | $ (2,728) | $ (3,114) | $ (11,967) | $ (18,210) |
| Stock-based expense [1] | 3,989 | 3,762 | 12,172 | 11,484 |
| Restructuring charges [3] | — | — | 1,094 | — |
| Amortization of acquired intangible assets | 473 | 473 | 1,418 | 1,418 |
| Acquisition-related and other expense | 84 | 332 | 380 | 1,258 |
| Other stock-related benefit [4] | — | — | (25) | — |
| Non-GAAP net income (loss) | $ 1,818 | $ 1,453 | $ 3,072 | $ (4,050) |
| GAAP basic and diluted shares | 83,348 | 81,096 | 82,830 | 80,649 |
| Non-GAAP basic and diluted net income (loss) per share | $ 0.02 | $ 0.02 | $ 0.04 | $ (0.05) |
| Adjusted EBITDA: | | | | |
| GAAP net loss | $ (2,728) | $ (3,114) | $ (11,967) | $ (18,210) |
| Stock-based expense [1] | 3,989 | 3,762 | 12,172 | 11,484 |
| Depreciation and amortization [2] | 3,513 | 3,512 | 10,623 | 10,490 |
| Restructuring charges [3] | — | — | 1,094 | — |
| Acquisition-related and other expense | 84 | 332 | 380 | 1,258 |
| Other stock-related benefit [4] | — | — | (25) | — |
| Income tax expense (benefit) | 123 | (163) | 350 | (127) |
| Total other expense, net | 332 | 719 | 1,760 | 1,906 |
| Adjusted EBITDA | $ 5,313 | $ 5,048 | $ 14,387 | $ 6,801 |

39.     The omission of the above-referenced projections and metrics renders the financial projections included in the Proxy Statement materially incomplete and misleading.  If a proxy or registration statement soliciting a shareholder vote discloses financial projections and valuation information, such projections must be complete and accurate.

## COUNT I

### (Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder)

40.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

41.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title."  15 U.S.C. § 78n(a)(1).

42.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

43.     Defendants have issued the Proxy Statement with the intention of soliciting stockholders support for the Proposed Merger.  Each Defendant reviewed and authorized the

dissemination of the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections for the Company.

44.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each Defendant, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

45.     Defendants knew or were negligent in not knowing that the Proxy Statement is materially misleading and omits material facts that are necessary to render it not misleading. Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Merger.

46.     Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy Statement, rendering the sections of the Proxy Statement identified above to be materially incomplete and misleading.  Indeed, Defendants were required to be particularly attentive to the procedures followed in preparing the Proxy Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

47.     Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement.  The preparation of a registration statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Proxy Statement or

failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully as the Company's directors.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

48.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Merger.

49.     Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**COUNT II**

**(Against the Individual Defendants for
Violations of Section 20(a) of the Exchange Act)**

50.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

51.     The Individual Defendants acted as controlling persons of Bazaarvoice within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Bazaarvoice, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

52.     Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

53.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Merger.  They were thus directly involved in preparing this document.

54.     In addition, as set forth in the Proxy Statement sets forth at length and described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

55.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

56.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of the Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

57.     Plaintiff and the Class have no adequate remedy at law.   Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment and relief as follows:

A.     Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representative and his counsel as Class Counsel;

B.     Enjoining Defendants and all persons acting in concert with them from proceeding with the stockholders vote on the Proposed Merger or consummating the Proposed Merger, unless and until the Company discloses the material information discussed above which has been omitted from the Proxy Statement;

C.     Directing Defendants to account to Plaintiff and the Class for all damages sustained as a result of their wrongdoing;

D.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

DATED:  January 10, 2018.

Respectfully submitted,


_____*/s/ Thomas E. Bilek*_____
Thomas E. Bilek
TX Bar No. 02313525
**THE BILEK LAW FIRM, L.L.P.**
700 Louisiana, Suite 3950

Houston, TX  77002
(713) 227-7720

*Attorneys for Plaintiff*

**OF COUNSEL:**

Joshua M. Lifshitz (to be admitted *pro hac vice*)
**LIFSHITZ & MILLER LLP**
821 Franklin Ave, Suite 209
Garden City, NY  11530
Telephone: (516) 493-9780
Facsimile: (516) 280-7376
Email: jml@jlclasslaw.com